S. WYMAN, APPELLANT, V. JOHN CONNERY, APPELLEE.

FILED MARCH 17, 1897.  No. 7149.

1. **Conflicting Evidence:** REVIEW. Where the evidence is such as to justify impartial minds in reaching different conclusions, the finding of fact thereon by the trial court will, on appeal, be assumed to be correct.

2. ———: ———. The evidence in this case examined, and *held* to be within the rule above stated.

APPEAL from the district court of Dixon county. Heard below before NORRIS, J. *Affirmed.*

*W. G. Sears* and *W. E. Gantt,* for appellant.

*J. J. McCarthy* and *J. V. Pearson, contra.*

RYAN, C.

This action was brought in the district court of Dixon county for the foreclosure of a mortgage made by ·the defendant to secure payment of his three promissory notes for $400 each; both the mortgage and the said notes being of date April 20, 1892. The principal sum of $400 on one note and the interest, at seven per cent per annum, on all three notes fell due April 20, 1893. It was provided in the mortgage that a failure to make any of the payments above noted should render the entire sum secured by the mortgage subject to collection, at the election of the mortgagee. The plaintiff alleged that neither

the principal sum of $400 above referred to nor the interest had been paid; that by this failure the entire sum secured had fallen due at plaintiff's option; that plaintiff elected to avail himself of the provision above noted, and there was accordingly a prayer for foreclosure. The defendant denied that he had failed to pay the principal and interest which fell due on April 20, 1893, and upon his plea of payment of this principal sum of $400 and the interest on the entire sum secured by the mortgage, denied by plaintiff's reply, there was a trial, which resulted in a judgment for the defendant, from which judgment plaintiff has appealed.

The defendant, during the time covered by the transactions described herein, had resided near Newcastle, in this state. During the same period the plaintiff had resided in or near Belle Plaine, Iowa. The notes were given for a part of the purchase price of the land described in the mortgage as being situated in Nebraska. They were, by their own terms, payable at Belle Plaine, Iowa. There was no bank at Newcastle, and therefore, on April 15, 1893, the defendant went to the First National Bank at Ponca and arranged with its cashier to pay the note coming due to plaintiff in a few days, as well as the interest, which would be due at the same time as the maturity of the note. The defendant had a certificate of deposit, which had been issued to him by the First National Bank of Ponca, for the sum of $500. The bank took up this, its certificate of deposit, and, as its cashier testified, made its draft payable to S. Wyman for the sum of $484, the principal and interest which would be due him on April 1, 1893, from Mr. Connery. The difference between the amount of the draft and the certificate of deposit Mr. Connery was paid in cash. There is no room for question that up to this time the First National Bank of Ponca was the agent of Mr. Connery, the defendant. About April 11, 1893, plaintiff left with the Citizens National Bank of Belle Plaine, Iowa, for collection, the note which would fall due in a few days. He retained in his own

possession the notes on which at the same time interest would mature. The Citizens National Bank of Belle Plaine, Iowa, at once notified Mr. Connery that it held his note for collection. About April 19, 1893, Mr. Wyman received a letter from the First National Bank of Ponca, of date April 15, 1893, which, omitting formal parts, was in this language: "John Connery has deposited money to pay off $400 note you hold and interest on balance for one year. Send notes here to us and we will indorse interest on back and remit your money free of cost to you." Mr. Wyman, as soon as he had received the letter, took it to the Citizens National Bank and showed it to the cashier of that institution, who, to overcome his objections to complying with the request contained in the letter, assured him there would be no trouble and that it was perfectly safe to send the note as requested. Mr. Wyman indorsed in blank the note about to fall due. The Citizens National Bank of Belle Plaine then placed upon the note the following indorsement: "Pay First Natl. Bank, Ponca, Neb., cashier or order, for collection for account of Citizens National Bank, Belle Plaine, Iowa. Chas. A. Blossom, cashier." The note, thus indorsed, was forwarded at once to the First National Bank of Ponca. The bank last named seems, very soon after having received the above note, to have sent its draft for $484, of date April 15, 1893, to Mr. Wyman, by whom the matured interest was credited on each of the two notes in his possession. This was on April 24, at which time Mr. Wyman received in cash from the Citizens National Bank of Belle Plaine the amount of said draft. The draft was drawn on the Security National Bank of Sioux City, Iowa, to which bank it was, through other banks, forwarded by the Citizens National Bank of Belle Plaine. The First National Bank of Ponca closed its doors for business on April 25, and when its draft reached the drawee at Sioux City on the 27th of the same month payment was refused and there was a protest for non-payment. Between the time when Mr.

Wyman received this draft and the day of its presentment at Sioux City the First National Bank of Ponca had an overdrawn account with the drawee of the draft. Between the time the draft was sent to him and the time Mr. Wyman received it there was to the credit of the drawer with the drawee only a fraction of the amount of this draft. After the draft had been protested Mr. Wyman repaid the amount he had obtained on it from the Citizens National Bank and is now the holder of it in his own name. As we have already said, the credit on April 15 was solely that of the First National Bank of Ponca in favor of the defendant. This bank at that time, instead of forwarding the amount to Mr. Wyman, wrote him that the money was in said First National Bank of Ponca for the payment of the note about to come due and the interest on the other two notes, and requested him to send the notes, whereon the interest would be indorsed, at the same time promising to make remittance of the total amount free of cost. Mr. Wyman thereupon directed the $400 note to be sent by the Citizens National Bank, substantially as requested. This note was surrendered to Mr. Connery as paid before the draft was presented in Sioux City. Upon receipt of the draft Mr. Wyman cashed it and indorsed an acknowledgment of payment of the interest due on each note in his hands. It is quite a material fact in this connection that Mr. Wyman has not tendered to Mr. Connery the draft sent him by the First National Bank of Ponca. If the bank last named should be able to pay any dividend, Mr. Connery ought to be placed in such a situation that, if the default of the bank is to be charged to him, he could receive such dividend as possibly may be paid. The questions presented were whether the First National Bank of Ponca, in forwarding the payment of the note and interest, was the agent of the plaintiff or the defendant. The proofs were of such a nature that impartial minds might fairly draw different inferences from them, and when such a condition is presented the question is not one of

law, but of fact, for the examination and the determination of the trier of the facts. The finding of the district court, under these circumstances, will not be disturbed. (See *Thomson v. Shelton*, 49 Neb., 644, and authorities therein cited.) The judgment of the district court is

AFFIRMED.